# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF AMHERST PIERPOINT COMMERCIAL MORTGAGE SECURITIES LLC, MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB59,**<br><br>             **Plaintiff,**<br><br>      v.<br><br>**MICH 424 PARK LLC,**<br><br>             **Defendant.** | **CIVIL ACTION**<br><br>**NO. 2:25-CV-00157-ES-JSA** |

# PLAINTIFF'S BRIEF IN SUPPORT OF
# ITS MOTION TO APPOINT A RECEIVER

# MOTION DATE: FEBRUARY 18, 2025

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1
II. RELEVANT BACKGROUND ............................................................................. 2
    A. The Loan and Loan Documents .............................................................. 2
    B. Borrower's Payment Default ................................................................... 4
    C. The Criminal Fraud Conviction of Borrower's Owner and Guarantor ................................................................................................. 5
    D. The Revocation of Borrower's Corporate Charter .................................. 6
    E. Borrower's Exposure of the Property to Municipal Liens ...................... 6
    F. Borrower's Unauthorized Change of Property Managers ....................... 7
III. ARGUMENT ......................................................................................................... 8
    A. Legal Standard ......................................................................................... 8
    B. The Court Should Appoint a Receiver for the Property .......................... 9
        1. The Loan Documents Expressly Grant Lender the Right to Obtain a Receiver Upon Borrower's Default. ...................... 10
        2. Borrower Is in Continuing and Longstanding Default of its Obligations under the Loan Documents. ............................. 12
        3. Borrower's Financial Standing is Doubtful. ............................ 12
        4. Mr. Drillman Has Engaged in Fraudulent Conduct. ................. 13
        5. Borrower's Actions Are Wasteful and Improper and Have Placed the Property at Risk. ............................................ 14
IV. PROPOSED RECEIVER ................................................................................... 15
V. CONCLUSION .................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*,
   999 F.2d 314 (8th Cir. 1993) .................................................................................................9

*Barclays Bank, P.L.C. v. Davidson Ave. Assocs., Ltd.*,
   274 N.J. Super. 519 (App. Div. 1994) ..................................................................................12

*Barclays Bank, P.L.C. v. Davidson Ave. Assocs., Ltd.*,
   644 A.2d 685 (N.J. App. Div. 1994) ......................................................................................8

*Canada Life Assurance Co. v. Lapeter*,
   563 F.3d 837 (9th Cir. 2009) ..............................................................................................8, 9

*Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*,
   No. 09-14703, 2010 U.S. Dist. LEXIS 5342, 2010 WL 374033 (E.D. Mich.
   Jan. 25, 2010) ........................................................................................................................13

*Fidelity Union Trust v. Pasternack*,
   196 A. 469 (N.J. E&A 1938) .................................................................................................8

*Inv'rs Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*,
   No. 09-4490, 2010 U.S. Dist. LEXIS 62543 (D.N.J. June 23, 2010) ...................................11

*Maxwell v. Enter. Wall Paper Mfg. Co.*,
   131 F.2d 400 (3d Cir. 1942) ...................................................................................................8

*Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*,
   No. 18cv17228, 2023 U.S. Dist. LEXIS 145543 (D.N.J. Aug. 17, 2023) ............................13

*Phx. NPL, LLC v. 1130 NB Realty, LLC*,
   No. 14-6993, 2015 U.S. Dist. LEXIS 168017 (D.N.J. Dec. 16, 2015) ....................11, 13, 14

*Stonebridge Bank v. NITA Props., LLC*,
   No. 09-5145, 2011 U.S. Dist. LEXIS 59078 (D.N.J. June 1, 2011) .....................................11

*The Chase Manhattan Bank, N.A. v. Turabo Shopping Center, Inc.*,
   683 F.2d 25 (1st Cir. 1982) ..................................................................................................10

*U.S. Bank, Nat'l Ass'n v. Montclair-Grove, LLC*,
   No. 12-770, 2012 U.S. Dist. LEXIS 200368 (D.N.J. June 25, 2012) ...................................11

*United States v. Berk & Berk*,
   767 F. Supp. 593 (D.N.J. 1991) .............................................................................................9

*Wells Fargo Bank, N.A. v. CCC Atl., LLC*,
    905 F. Supp. 2d 604 (D.N.J. 2012) ................................................................................. *passim*

**Other Authorities**

12 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2983 (2d ed.
    2013) ........................................................................................................................................8

Fed. R. Civ. Proc. 66..........................................................................................................................8

Case 2:25-cv-00157-ES-JSA   Document 7   Filed 01/22/25   Page 4 of 20 PageID: 195

Plaintiff, Wells Fargo Bank, National Association, as Trustee for the registered holders of Amherst Pierpoint Commercial Mortgage Securities LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59 ("Lender"), through its undersigned counsel, respectfully submits this brief in support of its motion to appoint a receiver for the subject property in this commercial mortgage foreclosure action.

## I.  INTRODUCTION

This is an action to foreclose a commercial mortgage executed by Defendant, MICH 424 Park LLC Bergen Lofts LLC ("Borrower"), to secure repayment of a loan in the principal amount of $1,497,000.00.  The collateral is a three-story walk-up mixed-use apartment building located at 424-428 Park Avenue in East Orange, Essex County, New Jersey (the "Property"), which contains eight residential units and 2,750 square feet of commercial space across three units. Lender holds and is suing to foreclose the Mortgage and now seeks the appointment of an operating receiver to preserve and protect its security in view of, *inter alia*, Borrower's longstanding default, the express receivership provisions of the mortgage contract, Borrower's owner's criminal fraud conviction and pending sentencing, the State of New Jersey's revocation of Borrower's corporate charter, Borrower's exposure of the Property to municipal liens and Borrower's unauthorized change in property management.

1

## II.     RELEVANT BACKGROUND

### A.     The Loan and Loan Documents

On or about October 26, 2018, CBRE Capital Markets, Inc. ("Original Lender"), issued to Borrower a commercial mortgage loan in the aggregate principal amount of $1,497,000.00 (the "Loan"). *See* Declaration of Ethan J. Meyer ("Meyer Dec.") ¶¶ 1 and 5. The Loan is evidenced by a Note effective as of October 26, 2018, executed by Borrower in favor of Original Lender in the principal amount of $1,497,000.00 (the "Note"). *See id.*, Ex. A (Note). To secure repayment on the Note, Borrower executed in favor of Original Lender a Multifamily Mortgage, Assignment of Rents and Security Agreement effective as of October 26, 2018 (the "Mortgage"). *See id.*, Ex. B (Mortgage). Borrower and Lender also entered into a Loan Agreement effective as of October 26, 2018 (the "Loan Agreement"), and Borrower's owner executed a Guaranty in favor of Original Lender effective as of October 26, 2018. *See id.*, Ex. C (Loan Agreement) and Ex. D (Guaranty).[1] Lender is the current holder of the original endorsed Note, the original Mortgage and the other Loan Documents. *See id.* ¶ 7.

The Mortgage provides that "Borrower absolutely and unconditionally assigns to Lender all Rents [as defined]," with the "intention of Borrower to establish

---

[1] The Note, the Mortgage, the Loan Agreement, the Guaranty and various other documents executed by Borrower and/or its owner in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

2

a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower." *See* Meyer Dec., Ex. B (Mortgage) § 3(a)(i). Although Lender has "grant[ed] to Borrower a revocable license to collect and receive all Rents," the Mortgage provides that "Borrower's license to collect Rents will automatically terminate" upon the occurrence and during the continuance of an Event of Default, in which case "Lender will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid." *See id.*, Ex. B (Mortgage) §§ 3(b)(i) and 3(b)(iii).

The Mortgage further provides that:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. ***If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver***, including the appointment of a receiver *ex parte* if permitted by applicable law.

*See* Meyer Dec., Ex. B (Mortgage) § 3(c)(ii) (emphasis added).

3

### B. Borrower's Payment Default

The Note requires that "Borrower will make a payment every month on the first day of each month (each, a '**Payment Date**')" of principal and interest, with the interest to be calculated at the Variable Annual Interest Rate beginning with the Payment Date for November 1, 2023. *See* Meyer Dec., Exhibit A (Note) §§ 1, 2(d) and 3(c). Additionally, the Loan Agreement requires that Borrower deposit with Lender on each Payment Date certain funds for taxes, insurance and specified reserves. *See id.*, Exhibit C (Loan Agreement) Art. IV.

The Loan Agreement defines an Event of Default to exist if, among other things, "Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document." *See* Meyer Dec., Exhibit C (Loan Agreement) § 8.01(a). Beginning with the monthly Payment Date for December 2023, Borrower has failed to make payments to Lender of principal and interest or reserve deposits. *See id.* ¶¶ 8-9 and Ex. E (Loan History).

Lender, through its counsel, provided a Notice of Default to Borrower by letter dated April 3, 2024 (the "Notice of Default"), which advised Borrower that it was in default under the Loan Documents by virtue of failing to pay the amounts due beginning with the monthly Payment Date for December 2023. *See* Meyer Dec., Ex. F (Notice of Default) at p. 2.

4

Notwithstanding the Notice of Default, Borrower failed to cure the ongoing Event of Default by paying the delinquent amounts due on the Loan. *See* Meyer Dec., Ex. E (Loan History). Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated August 1, 2024 (the "<u>Notice of Acceleration</u>"). *See id.*, Ex, G (Notice of Acceleration).

### C. The Criminal Fraud Conviction of Borrower's Owner and Guarantor

As evidenced by Borrower's filed Certificate of Formation and Operating Agreement, Boruch Drillman is the sole member of Borrower. *See* Declaration of Raymond A. Quaglia ("<u>Quaglia Dec</u>."), Ex. 1 (Operating Agreement) § 4. Mr. Drillman is also the sole guarantor for the Loan. *See* Meyer Dec., Ex. D (Guaranty) at p. 1.

On December 13, 2023, Mr. Drillman pleaded guilty before U.S. District Judge Robert Kirsch of this Court to having engaged in a multi-year conspiracy to fraudulently obtain more than $165 million in loans and fraudulently acquire multifamily and commercial properties. *See* Quaglia Dec., Ex. 2 (Docket) and Ex. 3 (DOJ press release). Mr. Drillman is scheduled to be sentenced on May 13, 2025. *See id.*, Ex. 2 (Docket).

5

### D. The Revocation of Borrower's Corporate Charter

Section 6.13 of the Loan Agreement requires that "until the Indebtedness is paid in full, Borrower will," among other things, "preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its formation or organization and will do all things necessary to observe organizational formalities." *See* Meyer Dec., Ex. C (Loan Agreement) § 6.13(b)(i). Pursuant to Section 8.01(f) of the Loan Agreement, it shall be an Event of Default if "Borrower fails to comply with the provisions of Section 6.13." *See id.*, Ex. C (Loan Agreement) § 8.01(f).

As evidenced by the records of the New Jersey Secretary of State, the State of New Jersey revoked Borrower's corporate charter effective January 17, 2023, due to Borrower's failure to file an annual report since 2018. *See* Quaglia Dec., Ex. 4 (NJ Records) at p. 2. Borrower's failure to preserve its existence as an entity duly organized, validly existing and in good standing under the laws of New Jersey is a violation of Section 6.13 and constitutes an Event of Default under Section 8.01(f) of the Loan Agreement. *See id.*, Ex. C (Loan Agreement) §§ 6.13(b)(i) and 8.01(f).

### E. Borrower's Exposure of the Property to Municipal Liens

Section 6.14(d) of the Loan Agreement requires that Borrower "will keep the Mortgaged Property free and clear of any and all Liens other than the Lien of the Security Instrument and any other junior Lien to which Lender has consented."

*See* Meyer Dec., Exhibit C (Loan Agreement) § 6.14(d). "Lien" is defined to encompass "any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance on the Mortgaged Property." *See id.*, Exhibit C (Loan Agreement) at p. 50 (defining "Lien"). The creation or existence of a Lien upon the Mortgaged Property is a prohibited Transfer that constitutes an Event of Default under the Loan Documents. *See id.*, Exhibit C (Loan Agreement) § 7.02(a).

As evidenced by a New Jersey tax & assessment search, Borrower is presently delinquent on its payments to the East Orange Water Commission and the East Orange Department of Public Works and has exposed the property to at least one Lien, which was sold to a third party on December 4, 2024. *See* Quaglia Dec. ¶ 7 and Ex. 5.

### F.  Borrower's Unauthorized Change of Property Managers

Section 6.09(l)(i) of the Loan Agreement provides that "Borrower will not change the property management structure or the identity of the Property Manager (if applicable) without Lender's prior consent." *See* Meyer Dec., Ex. C (Loan Agreement) §§ 6.09(l)(i). Upon information and belief, effective April 15, 2024, Borrower changed the identity of the Property Manager from OPEX Realty Management, Inc., to Estate Realty Management without Lender's prior consent. *See id*. ¶ 13.

## III.   ARGUMENT

### A.   Legal Standard

Rule 66 of the Federal Rules of Civil Procedure governs the appointment of a receiver in diversity jurisdiction cases. Thus, the federal courts have applied federal common law in determining whether the appointment of a receiver in a foreclosure action is appropriate. *See Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 610 (D.N.J. 2012), citing *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 402 (3d Cir. 1942) ("In diversity suits, federal law governs the issue of whether a receiver should be appointed.").

The Court may also consider New Jersey law in deciding whether to appoint a receiver. *See, e.g.*, *Canada Life Assurance Co. v. Lapeter*, 563 F.3d 837, 845 (9th Cir. 2009) (holding that "the district court has broad discretion in appointing a receiver"); 12 Charles Alan Wright, et al., *Federal Practice and Procedure* § 2983 (2d ed. 2013) (observing that "federal courts are likely to look to state law for guidance" in the absence of substantial federal precedent under Rule 66). Under New Jersey law, the decision to appoint a receiver in a mortgage foreclosure proceeding "is in a large sense discretionary and should be exercised when it appears necessary for the protection of the mortgagee." *Fidelity Union Trust v. Pasternack*, 196 A. 469, 470 (N.J. E&A 1938); *accord Barclays Bank, P.L.C. v. Davidson Ave. Assocs., Ltd.*, 644 A.2d 685, 687 (N.J. App. Div. 1994) ("A receiver should be appointed when it appears necessary to protect the mortgagee's security.").

**B.     The Court Should Appoint a Receiver for the Property.**

It has oft been observed in the context of federal mortgage foreclosure actions that "there is 'no precise formula for determining when a receiver may be appointed.'"  *Canada Life*, 563 F.3d at 844 (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).  Rather, "federal courts consider a variety of factors in making this determination." *Canada Life*, 563 F.3d at 844 (listing seven factors); *see also United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991) (listing additional or alternative factors).

The factors that have been held to guide the Court in the exercise of its discretion include, among others, "the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; [and] the unstable financial status of the mortgagor." *CCC Atl.*, 905 F. Supp. 2d at 614 (quoting *Berk & Berk*, 767 F. Supp. at 597).  Where, as here, "the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure," the Court may consider additional factors, including:

> "the danger of waste[;] delays in foreclosure," *Canada Life Assurance Co.*, 563 F.3d at 845 (internal citation and quotation omitted); the defendant's "fraudulent conduct"; "imminent danger that property [will] be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury

9

to [its] interests in the property."

*CCC Atl.*, 905 F. Supp. 2d at 614-615 (quoting *The Chase Manhattan Bank, N.A. v. Turabo Shopping Center, Inc*., 683 F.2d 25, 26-27 (1st Cir. 1982) (internal citation and quotation omitted)).

This Court should appoint a receiver to operate and manage the Property and collects rents and revenues therefrom during the pendency of this foreclosure action because: (i) Borrower expressly agreed to such a remedy as a condition for receiving the Loan when it signed the Loan Documents; (ii) Borrower has been in default of its payment and other obligations to Lender for more than one year; (iii) Borrower's financial status is unstable; (iv) Borrower's owner, Mr. Drillman, has been convicted of engaging in fraudulent conduct; and (v) the misconduct by Borrower and Mr. Drillman has caused waste to the Property and otherwise placed Lender's security at risk.

### 1. The Loan Documents Expressly Grant Lender the Right to Obtain a Receiver Upon Borrower's Default.

As noted above, the Mortgage expressly provides that Lender may apply for the appointment of a receiver upon the occurrence of an Event of Default "regardless of the adequacy of Lender's security" and that "***Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver***." See Meyer Dec., Ex. B (Mortgage) § 3(c)(ii) (emphasis added).

As the Court held in *CCC Atlantic*, "[t]he importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." 905 F. Supp.2d at 615; *see also Phx. NPL, LLC v. 1130 NB Realty, LLC*, No. 14-6993, 2015 U.S. Dist. LEXIS 168017, at *4 (D.N.J. Dec. 16, 2015) ("These provisions in the Leasehold Mortgage weigh in favor of appointing a receiver."); *U.S. Bank, Nat'l Ass'n v. Montclair-Grove, LLC*, No. 12-770, 2012 U.S. Dist. LEXIS 200368, at *5-6 (D.N.J. June 25, 2012) ("Defendant agreed to the remedy of a receivership appointment in the event of a default pursuant to . . . the Mortgage, and the Court gives considerable weight to such a contractual stipulation when evaluating whether a receiver should be appointed."); *Stonebridge Bank v. NITA Props., LLC*, No. 09-5145, 2011 U.S. Dist. LEXIS 59078, at *6 (D.N.J. June 1, 2011) ("[T]he fact that [the borrower] consented to receivership in the First Mortgage heavily favors appointment of a receiver."); *Inv'rs Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, No. 09-4490, 2010 U.S. Dist. LEXIS 62543, at *14 (D.N.J. June 23, 2010) ("The presence of a contractual stipulation to the appointment of a receiver is given considerable weight in the court's evaluation of whether a rent receiver should be appointed." (citation and quotation marks omitted).

New Jersey law is equally clear that a receiver may properly be appointed where, as here, the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default. *See, e.g.*, *Barclays Bank, P.L.C. v. Davidson Ave. Assocs., Ltd.*, 274 N.J. Super. 519, 523 (App. Div. 1994). Accordingly, as in *CCC Atlantic*, this factor strongly supports the appointment of a receiver for the Property.

### 2. Borrower Is in Continuing and Longstanding Default of its Obligations under the Loan Documents.

Defendant has indisputably been in default of its payment obligations to Lender under the Loan Documents since December 2023, when Borrower ceased making payments of principal and interest or reserve deposits. As a result, Lender declared the Loan to be in default on April 3, 2024, and, absent any cure by Borrower, accelerated the Indebtedness on August 1, 2024.

In addition to its payment default, Borrower has also independently defaulted on its contractual obligations to preserve its existence as an entity duly organized, validly existing and in good standing under the laws of New Jersey, to keep the Property free and clear of prohibited Liens and not to change property managers without Lender's consent.

### 3. Borrower's Financial Standing is Doubtful.

It also appears that Borrower is of dubious financial standing, having failed for more than one year to make the debt service payments and reserve deposits

required by the Loan Documents. This ongoing failure is in and of itself a sufficient basis for the Court to appoint a receiver for the Property. *See e.g.*, *CCC Atl.*, 905 F. Supp.2d at 616 ("CCC Atlantic's . . . continued failure to cure the default demonstrates its doubtful financial standing."); *see also Phoenix NPL, LLC v. 1130 NB Realty, LLC*, Civil Action No. 14-6993, 2015 U.S. Dist. LEXIS 168017, at *4 (D.N.J. Dec. 16, 2015) (noting that "the continued default of the mortgagor also weighs in favor of appointing a receiver"); *Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 U.S. Dist. LEXIS 5342, at *7, 2010 WL 374033 (E.D. Mich. Jan. 25, 2010) (appointing a receiver and noting that "[c]ourts contemplating the appointment of a receiver have considered a number of factors but have found the adequacy of the security and the financial position of the mortgagor to be most important").

### 4. Mr. Drillman Has Engaged in Fraudulent Conduct.

As noted above, Mr. Drillman, Borrower's owner and guarantor, has pleaded guilty in this Court to having engaged in a multi-year conspiracy to fraudulently obtain more than $165 million in loans and fraudulently acquire multifamily and commercial properties. *See* Quaglia Dec., Ex. 2 (Docket) and Ex. 3 (DOJ press release). The courts have held that evidence of fraudulent conduct supports the appointment of a receiver. *See*, *e.g.*, *Nissan Motor Acceptance Corp. v. Infiniti of Englewood, LLC*, No. 18cv17228, 2023 U.S. Dist. LEXIS 145543,

(D.N.J. Aug. 17, 2023) ("Also guiding the Court's determination are the relevant equitable factors of Defendants' fraudulent conduct and financial standing, which also favor appointing a receiver.") (citing authorities). And although Lender has not conclusively determined whether Mr. Drillman fraudulently obtained the Loan and/or fraudulently acquired the Property, his guilty plea and pending sentencing, together with Borrower's default on its payment obligations contemporaneously with the filing of the criminal action, indicate that Mr. Drillman lacks the fitness, resources and attention required to operate the Property for the benefit of the tenants.

### 5. Borrower's Actions Are Wasteful and Improper and Have Placed the Property at Risk.

Borrower's dubious financial status and misconduct have resulted in waste and risk that the Property will be injured and/or diminished in value. Among other things, Borrower has failed to pay water charges for the Property, resulting in the creation of at least one Lien that has been sold to a third party. This factor, too, supports the appointment of a receiver. *See, e.g., Phoenix NPL, LLC v. 1130 NB Realty, LLC*, Civil Action No. 14-6993, 2015 U.S. Dist. LEXIS 168017, at *4 (D.N.J. Dec. 16, 2015) ("[T]he Court finds that NB Realty's failure to pay [property taxes and municipal water charges] weighs in favor of appointing a receiver.").

14

## IV. PROPOSED RECEIVER

Lender respectfully proposes that the Court appoint Ian V. Lagowitz of Trigild IVL, whose proposal and qualifications are attached to the Meyer Declaration as Exhibit H. Trigild IVL has handled over 2,000 receivership appointments, including numerous receiverships for multifamily properties, and is eminently qualified to operate and manage the Property for the duration of this foreclosure action. *See* Meyer Dec., Ex. H (Proposal) at p. 2.

## V. CONCLUSION

The application of the relevant factors that the Court may consider in determining whether to appoint a receiver weighs heavily in favor of granting Lender's motion. As demonstrated above, the Loan Documents expressly provide for the appointment of a receiver in the present circumstances, and the balance of the equities decisively favors Lender. The appointment of a receiver here is an appropriate and narrowly tailored remedy that is necessary to ensure the protection of Lender's interest in the Property and the rents and profits therefrom, and to prevent the potential dissipation of Lender's collateral during the pendency of these proceedings.

         Respectfully submitted,

Dated: January 22, 2025    */s/ Raymond A. Quaglia*
              Raymond A. Quaglia, Esq.
              Facundo Bouzat, Esq.
              BALLARD SPAHR LLP
              1735 Market Street, 51st Floor
              Philadelphia, PA 19013
              (215) 665-8500 (Telephone)
              (215) 864-8999 (Fax)
              quaglia@ballardspahr.com
              bouzatf@ballardspahr.com

              Counsel for Plaintiff