# Exhibit C

# Freddie Mac MULTIFAMILY

Loan Agreement – SBL (Revised 05-31-2018)

Freddie Mac Loan Number:   503001198

| | |
|---|---|
| **Borrower:** | **MICH 424 PARK LLC**, a New Jersey limited liability company |
| **Lender:** | **CBRE CAPITAL MARKETS, INC.**, a Texas corporation |
| **Effective Date:** | As of October 26, 2018 |
| **Loan Amount:** | $1,497,000.00 |

This Loan Agreement ("**Loan Agreement**") is made by and between Borrower and Lender and is dated as of the Effective Date. Lender has agreed to make and Borrower has agreed to accept a loan for the Loan Amount ("**Loan**") upon the terms and subject to the conditions in this Loan Agreement. The Loan will be evidenced by the Note and will bear interest and be paid in accordance with the payment terms set forth in the Note. Lender and Borrower each acknowledge the receipt and sufficiency of adequate consideration for the making and receiving of this Loan.

| Table of Contents | | | |
|---|---|---|---|
| Article I | Key Terms | Article VII | Transfers |
| Article II | Security Agreement | Article VIII | Events of Default and Remedies |
| Article III | Personal Liability | Article IX | Release; Indemnity |
| Article IV | Reserve Funds and Requirements | Article X | Miscellaneous Provisions |
| Article V | Representations and Warranties | Article XI | Defined Terms |
| Article VI | Covenants | | |

## ARTICLE I – KEY TERMS.

| Modifications and Riders | |
|---|---|
| ☐ | Loan Agreement modifications are included in Exhibit B |
| ☐ | The following rider(s) are attached to this Loan Agreement: [if checked, list] |

| Base Recourse |
|---|
| A portion of the Indebtedness equal to 0% of the Loan Amount *(see Article III)* |

| Tax and Insurance Reserves | |
|---|---|
| Taxes - ☒ Collected or ☐ Deferred | Insurance premiums - ☐ Collected or ☒ Deferred |
| *(See Article IV)* | |

| Capital Replacement and Repair Reserve | |
|---|---|
| Capital Replacement and Repair Reserve **Monthly** Deposit of $166.67 is ☐ Collected or ☒ Deferred | |
| ☐ | **One Time** Capital Replacement Deposit of $_____ is required for Additional Capital Replacements. |
| ☐ | **One Time** Repair Deposit of $_____ is required for Priority Repairs (including PR-90 Repairs) |
| *(See Article IV)* | |

| Required Additional Capital Replacements and Repairs | |
|---|---|
| ☐ | Additional Capital Replacements are required and are listed in <u>Exhibit B</u>. The Additional Capital Replacements Completion Date is 0 days after the Effective Date. |
| ☒ | Priority Repairs (may include PR-90 Repairs) are required and are listed in the Physical Risk Report. |
| *Recourse and other requirements related to Repairs are detailed in Sections 3.03, 3.04, and Section 6.14.* | |

| Special Purpose Reserve Fund | |
|---|---|
| ☐ | **One Time** Special Purpose Reserve Fund Deposit in the amount of $_____ is required |
| ☐ | The Termination Date is ___ days after the Effective Date. The Release Conditions are listed in <u>Exhibit B</u>. |
| *(See Article IV)* | |

Loan Agreement – SBL
Property Name:  424-428 Park Avenue

(c) There was fraud or intentional written material misrepresentation by Borrower, any Affiliate, or any employee of Borrower in connection with the application for or creation of the Indebtedness or there is fraud in connection with any request by Borrower or Guarantor for any action or consent by Lender.

(d) A Bankruptcy Event.

**3.06** **Exercise of Lender's Rights and Application of Payment.** If Borrower has personal liability under this Article III, then Lender may, to the fullest extent permitted by applicable law, exercise its rights against Borrower personally without regard to whether Lender has exercised any rights against the Mortgaged Property or any other security, or pursued any rights against any Guarantor, or pursued any other rights available to Lender under the Note, this Loan Agreement, any other Loan Document or applicable law. To the fullest extent permitted by applicable law, in any action to enforce Borrower's personal liability under this Article III, Borrower waives any right to set off the value of the Mortgaged Property against such personal liability. All payments made by Borrower with respect to the Indebtedness and all amounts received by Lender from the enforcement of its rights under the Loan Documents will be applied first to the portion of the Indebtedness for which Borrower has no personal liability.

**3.07** **Reserved.** [Ground Lease]

**ARTICLE IV   RESERVE FUNDS AND REQUIREMENTS.**

**4.01** **Reserves Generally.**

(a) Establishment of Reserve Funds. Each Reserve Fund marked in Article I as required or collected will be established on the Closing Date and funded in accordance with this Article IV. Upon Notice to Borrower following (i) an Event of Default, (ii) a Transfer requiring Lender's approval under Article VII, or (iii) the placement of a Subordinate Loan, Lender may require Borrower to establish and make deposits into any Reserve Fund marked in Article I as deferred.

(b) Investment of Reserve Funds. All Reserve Funds will be deposited in an Eligible Account at an Eligible Institution or invested in "permitted investments" as then defined and required by the Rating Agencies. Lender will not be obligated to open additional accounts or deposit Reserve Funds in additional institutions when the amount of any Reserve Fund exceeds the maximum amount of the federal deposit insurance or guaranty. Borrower acknowledges and agrees that it will not have the right to direct Lender as to any specific investment of monies in any Reserve Fund. Lender will not be responsible for any losses resulting from investment of monies in any Reserve Fund or for obtaining any specific level or percentage of earnings on such investment. Unless applicable law requires, Lender will not be required to pay Borrower any interest, earnings or profits on any Reserve Funds. Any amounts deposited with Lender under this Article IV will not be trust funds, nor will they operate to reduce the Indebtedness, unless applied by Lender for that purpose pursuant to the terms of this Loan Agreement.

(c) Use of Reserve Funds; No Disbursements during Event of Default. Each Reserve Fund will, except as otherwise provided in this Loan Agreement, be used for the sole purpose of paying, or reimbursing Borrower for payment of, the item(s) for which the applicable Reserve Fund is established. Except as specified in this Loan Agreement, monies in one Reserve Fund will not be used to pay, or reimburse Borrower for, matters for which another Reserve Fund has been established. Lender will not be obligated to make disbursements from any Reserve Fund if any Event of Default has occurred and is continuing. If an Event of Default has occurred and is continuing, then Lender may use any Reserve Fund for the payment or performance of any obligation of Borrower to Lender or otherwise with respect to the Mortgaged Property.

(d) Termination of Reserve Funds. Upon payment in full of the Indebtedness, Lender will pay to Borrower all funds remaining in any Reserve Funds.

**4.02    Tax and Insurance Reserves.**

(a)    <u>Deposits</u>. When required by Lender, Borrower will deposit with Lender on the Closing Date and on each Payment Date under the Note an additional amount sufficient to accumulate with Lender the entire sum required to pay, when due, Taxes ("**Tax Reserve Fund**") and Insurance premiums ("**Insurance Reserve Fund**").

The amount of each required deposit into the Tax Reserve Fund and Insurance Reserve Fund must be sufficient to enable Lender to pay the Taxes or Insurance premiums, as applicable, before the last date upon which the payment may be made without any penalty or interest charge being added.

(b)    <u>Disbursements</u>.

(i)    Lender will pay Taxes from the Tax Reserve Fund held by Lender upon Lender's receipt of a bill or invoice for Taxes. Lender will have no obligation to pay Taxes to the extent the amount payable exceeds the Tax Reserve Fund then held by Lender. Lender may pay Taxes according to any bill, statement or estimate from the appropriate public office without inquiring into the accuracy of the bill, statement or estimate.

(ii)    Lender will pay Insurance premiums from the Insurance Reserve Fund held by Lender upon Lender's receipt of a bill or invoice for Insurance premiums. Lender will have no obligation to pay Insurance premiums to the extent the amount payable exceeds the Insurance Reserve Fund then held by Lender. Lender may pay Insurance premiums according to any bill, statement or estimate from an insurance company without inquiring into the accuracy of the bill, statement or estimate.

(c)    <u>Adjustments to Reserve Fund Deposits</u>. If at any time the amount of either the Tax Reserve Fund or the Insurance Reserve Fund held by Lender for payment of Taxes or Insurance premiums exceeds the amount reasonably deemed necessary by Lender, then the excess will be credited against future payments into the applicable Reserve Fund. If at any time the amount of either the Tax Reserve Fund or the Insurance Reserve Fund is less than the amount reasonably estimated by Lender to be necessary, then Borrower will pay to Lender the amount of the deficiency within 20 days after Notice from Lender.

(d)    <u>Delivery of Invoices; Proof of Payment by Borrower</u>. Borrower will promptly deliver to Lender a copy of all notices of, and invoices for, Taxes and Insurance premiums. If Lender has not established a Reserve Fund for either Taxes or Insurance premiums, then on or before the date the Taxes or Insurance premiums are due, Borrower will provide Lender with proof of payment of the Taxes or Insurance premiums.

**4.03    Special Purpose Reserve Fund.**

(a)    <u>Deposit</u>. If a Special Purpose Reserve is required in Article I, then Borrower will pay to Lender on the Closing Date the amount set forth in Article I ("**Special Purpose Reserve Fund**").

(b)    <u>Disbursements</u>. Lender will disburse the funds in the Special Purpose Reserve Fund to Borrower when the Release Conditions specified in <u>Exhibit B</u> have been satisfied in Lender's discretion.

(c)    <u>Application of Reserve Funds after the Termination Date</u>. If Borrower has not satisfied the Release Conditions on or before the Termination Date specified in Article I, then Lender may apply some or all the Special Purpose Reserve Fund to the Indebtedness, and Borrower will pay a prepayment premium computed using the formula set forth in the Note with respect to any such prepayment of principal under the Note. Borrower may not pay the prepayment premium from funds drawn from the Special Purpose Reserve Fund.

4.04    **Capital Replacement and Repair Reserve Fund.**

    (a)    Monthly Deposits. If the Capital Replacement and Repair Reserve Monthly Deposit is shown as collected in Article I, then on each Payment Date under the Note, Borrower will pay to Lender the Capital Replacement and Repair Reserve Monthly Deposit amount shown in Article I ("**Capital Replacement and Repair Reserve Fund**").

    (b)    Disbursements from Capital Replacement and Repair Reserve Fund. Lender will disburse funds from the Capital Replacement and Repair Reserve Fund to Borrower for reimbursement of, or to defray the cost of, each of the following, provided the conditions set forth in Sections 4.04(f) and (g) are satisfied:

        (i)    Replacing any of the following:

            Carpet/vinyl flooring, window treatments, roofs, furnaces/boilers, air conditioners, ovens/ranges, refrigerators, dishwashers, water heaters, garbage disposals, and other items that Lender may approve after the Effective Date, subject to any conditions that Lender may require ("**Basic Capital Replacements**," and together with any Additional Capital Replacements listed in Exhibit B, "**Capital Replacements**").

        (ii)    Completing the Priority Repairs described in the Physical Risk Report, provided a Repair Deposit is required in Article I.

    (c)    Additional Capital Replacements Deposit. If an Additional Capital Replacements Deposit is required in Article I, then on the Closing Date, Borrower will pay the Additional Capital Replacements Deposit to Lender for deposit into the Capital Replacement and Repair Reserve Fund. The Additional Capital Replacements Deposit will be available to reimburse Borrower only for reimbursement of, or to defray, the cost of the Additional Capital Replacements listed in Exhibit B.

        Borrower may not displace or relocate tenants to undertake or complete the Additional Capital Replacements unless such displacement or relocation has been approved by Lender. Borrower must complete the Additional Capital Replacements on or before the Additional Capital Replacements Completion Date specified in Article I, as may be extended by Lender in its discretion. Any funds from the Additional Capital Replacements Deposit remaining in the Capital Replacement and Repair Reserve Fund after the Additional Capital Replacements are completed in a manner satisfactory to Lender will be returned to Borrower.

    (d)    Repair Deposit. If a Repair Deposit is required in Article I, then on the Closing Date, Borrower will pay the Repair Deposit to Lender for deposit into the Capital Replacement and Repair Reserve Fund. The Repair Deposit will be available to reimburse Borrower only for reimbursement of, or to defray, the cost of Priority Repairs (including PR-90 Repairs). Any funds from the Repair Deposit remaining in the Capital Replacement and Repair Reserve Fund after all the Priority Repairs are completed in a manner satisfactory to Lender will be returned to Borrower.

    (e)    Insufficient Amount in Capital Replacement and Repair Reserve Fund. If Borrower requests disbursement from the Capital Replacement and Repair Reserve Fund for a Capital Replacement or a Priority Repair (including PR-90 Repairs) in an amount that exceeds the amount on deposit in the Capital Replacement and Repair Reserve Fund, then Lender will disburse to Borrower only the amount on deposit in the Capital Replacement and Repair Reserve Fund. Borrower will pay all additional amounts required in connection with any such Capital Replacement or Priority Repair from Borrower's own funds.

    (f)    Limits on Disbursements. Lender will disburse funds from the Capital Replacement and Repair Reserve Fund no more frequently than once per calendar month, and no disbursement will be made in an amount less than $1,000.

    (g)    Performance of Capital Replacements and Priority Repairs (including PR-90 Repairs):

Requests for Disbursement.

(i) If Borrower determines that a Capital Replacement is necessary or desirable, then Borrower will perform such Capital Replacement and request from Lender, in writing, reimbursement for the cost of such Capital Replacement from the Capital Replacement and Repair Reserve Fund using the Disbursement Request attached to this Loan Agreement as <u>Exhibit A</u>. The Disbursement Request must be accompanied by paid invoices or bills that show Borrower has paid for the applicable Capital Replacement.

(ii) Borrower must complete all Priority Repairs (including PR-90 Repairs) pursuant to Section 6.14. After Borrower performs one or more Priority Repairs, Borrower may request from Lender reimbursement for the cost of such Priority Repair(s) from the Capital Replacement and Repair Reserve Fund using the Disbursement Request attached to this Loan Agreement as Exhibit A. The Disbursement Request must be accompanied by paid invoices or bills that show Borrower has paid for the applicable Priority Repair.

(iii) If requested by Lender, Borrower must provide any other information, documents, lien waivers, certifications, or professional engineering reports regarding the work and the cost of such Capital Replacements or Priority Repairs. Lender, at its option, may retain a professional inspection engineer or other qualified third party to inspect any Capital Replacement or Priority Repair. If Lender retains such a third party, then it will charge Borrower an amount sufficient to pay all reasonable costs and expenses charged by such third party inspector. Lender may, at its election, either deduct such cost from the Capital Replacement and Repair Reserve Fund or send Borrower a Notice of the amount of such charge, which Borrower must pay within 20 days following its receipt of such Notice.

(iv) If Lender reasonably determines at any time that a Capital Replacement or a Repair is necessary for the proper maintenance of the Mortgaged Property, then Lender will give Notice to Borrower requesting that Borrower obtain and submit to Lender bids for all labor and materials required in connection with such Capital Replacement or Repair. In response, Borrower will submit such bids and a time schedule for completing each Capital Replacement or Repair to Lender within 30 days after Borrower's receipt of Lender's Notice. Borrower will perform such Capital Replacement or Repair in conformity with the requirements of this Section 4.04 and then may request reimbursement for such Capital Replacement or Repair in accordance with this Section 4.04.

(h) Adjustments to Reserve Fund Deposits. If the initial term of the Loan is greater than 120 months, then following each of the 120th and 180th Payment Dates under the Note, Lender may adjust the amount of the Capital Replacement and Repair Reserve Monthly Deposit based on Lender's most recent assessment of the physical condition of the Mortgaged Property and will provide Borrower Notice of this revised Capital Replacement and Repair Reserve Monthly Deposit amount. Borrower will begin paying this revised Capital Replacement and Repair Reserve Monthly Deposit on the next Payment Date following its receipt of the Notice from Lender.

**4.05** **Reserved**

**4.06** **Reserved** [Ground Lease]

**ARTICLE V    REPRESENTATIONS AND WARRANTIES.**

Borrower represents and warrants to Lender as follows as of the Effective Date:

**5.01** **Review of Documents.** Borrower has reviewed: (a) the Physical Risk Report, (b) the Commitment Letter (c) the Note, (d) this Loan Agreement, (e) the Security Instrument, and (f) all other Loan Documents.

**5.02** **Condition of Mortgaged Property.** Except as Borrower may have disclosed to Lender in writing in connection with the issuance of the Commitment Letter (which written disclosure may be in certain written reports accepted by Lender in connection with the funding of the Indebtedness and dated prior to the

Lender holds sufficient Tax Reserves and Borrower has timely delivered to Lender any bills or notices that it has received with respect to Taxes. Lender will have no liability to Borrower for failing to pay any Taxes if any of the following conditions exist: (i) any Event of Default has occurred and is continuing, (ii) Lender holds insufficient Tax Reserves at the time a Tax becomes due and payable, or (iii) Borrower has failed to provide Lender with bills and notices as provided in this Section 6.08.

(d) Payment of Insurance and Reserve Funds. If Lender is collecting Insurance Reserves pursuant to Article IV, then so long as no Event of Default exists, Borrower will not be obligated to pay Insurance premiums but only if Lender holds sufficient Insurance Reserve Deposits and Borrower has timely delivered to Lender any bills or premium notices that it has received with respect to Insurance premiums. Lender will have no liability to Borrower for failing to pay any Insurance premiums if any of the following conditions exist: (i) any Event of Default has occurred and is continuing, (ii) Lender holds insufficient Insurance Reserve Deposits at the time an Insurance premium becomes due and payable, or (iii) Borrower has failed to provide Lender with bills and premium notices as provided in this Section 6.08.

(e) Right to Contest. Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of Taxes, if: (i) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (ii) the Mortgaged Property is not in danger of being sold or forfeited, (iii) if Borrower has not already paid the Taxes, Borrower deposits with Lender reserves sufficient to pay the contested Taxes, if requested by Lender, and (iv) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of reserves established by Borrower to pay the contested Taxes.

**6.09 Preservation, Management, and Maintenance of Mortgaged Property.**

(a) Maintenance of Mortgaged Property; No Waste. Borrower will keep the Mortgaged Property in good repair, including replacing Personalty and Fixtures with items of equal or better function and quality. Borrower will not commit waste or permit impairment or deterioration of the Mortgaged Property.

(b) Abandonment of Mortgaged Property. Borrower will not abandon the Mortgaged Property.

(c) Preservation of Mortgaged Property.

   (i) Borrower will promptly restore or repair, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not Insurance proceeds or Condemnation awards are available to cover any costs of such Restoration or Repair; provided, however, that Borrower will not be obligated to perform such Restoration or Repair if (A) no Event of Default has occurred and is continuing, and (B) Lender has elected to apply any available Insurance proceeds and/or Condemnation awards to the payment of Indebtedness pursuant to Section 6.10(j) or Section 6.11(b).

   (ii) Borrower will give Notice to Lender of and, unless otherwise directed in writing by Lender, will appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security or Lender's rights under this Loan Agreement.

(d) Alteration of Mortgaged Property – Consent Required. Before taking any of the following actions, or permitting any tenant or other Person to take any of the following actions, Borrower must have the prior written consent of Lender:

   (i) Converting any residential unit or common area to non-residential use.

   (ii) Converting any non-residential unit or common area to residential use.

   (iii) Converting, in whole or in part, any income producing unit to a non-income producing unit.

   (iv) Modifying the number of bedrooms in any residential unit.

   (v) Displacing or relocating more than 20% of tenants to undertake or complete any Repair, Capital Replacement, or Property Improvements, unless such displacement or relocation is required by law.

   (vi) Removing, demolishing, or altering the Mortgaged Property or any part of the Mortgaged Property, including any removal, demolition, or alteration occurring in connection with a rehabilitation of all or part of the Mortgaged Property.

 (e) <u>Alteration of Mortgaged Property – Consent Not Required</u>. Notwithstanding Section 6.09(d)(vi), Borrower may undertake, or permit a Tenant to undertake, any of the following without the prior written consent of Lender.

   (i) Repairs and Capital Replacements.

   (ii) Replacement of tangible Personalty.

   (iii) Making an individual unit ready for a new occupant.

   (iv) Preservation and maintenance of the Mortgaged Property in accordance with Sections 6.09(a) and (d).

   (v) Alterations intended to renovate or upgrade the Mortgaged Property ("**Property Improvement**"), provided the Property Improvement complies with Section 6.14 and it does not:

    (A) Include any of the actions listed in Sections 6.09(d)(i)-(v).

    (B) Require demolition of any existing Improvements.

    (C) Cause a permanent obstruction of tenants' access to units or a temporary obstruction of tenants' access to units without a reasonable alternative access provided during the period the Property Improvement is underway.

    (D) Have an adverse effect on any major building systems, including the following:

     (1) Electrical (electrical lines or power upgrades, excluding fixture replacement).

     (2) HVAC (central and unit systems, excluding replacement of in kind unit systems).

     (3) Plumbing (supply and waste lines, excluding fixture replacement).

     (4) Structural (foundation, framing, and all building support elements).

   (vi) If Borrower is a cooperative housing corporation or association, removal, demolition, or alteration of the Mortgaged Property as permitted with respect to individual residential units under the form of a proprietary lease or occupancy agreement.

 (f) <u>Establishment of MMP</u>. If MMP is marked "Required" in Article I, then on or prior to the Effective Date, Borrower will establish and will adhere to an MMP. If Borrower is required to have an MMP, then Borrower will keep all MMP documentation at the Mortgaged Property, Borrower's main business office, or at Property Manager's office and available for review by Lender or the Loan Servicer during any annual assessment or other inspection of the Mortgaged Property. At a

minimum, a required MMP must contain provisions for: (i) staff training, (ii) information to be provided to tenants, (iii) documentation of the plan, (iv) the appropriate protocol for incident response and remediation, and (v) routine, scheduled inspections of common space and unit interiors.

(g) Inspection of Mold. If Lender determines that Mold has or may have developed as a result of a water intrusion event or leak, then Lender may require that a professional inspector inspect the Mortgaged Property to confirm whether Mold has developed and, if so, thereafter as frequently as Lender determines is necessary until any issue with Mold and its cause(s) are resolved to Lender's satisfaction. Such inspection will be limited to a visual and olfactory inspection of the area that has experienced the Mold, water intrusion event or leak. Borrower will be responsible for the cost of each such professional inspection and any remediation deemed to be necessary as a result of the professional inspection.

(h) Aluminum Wiring. If the Mortgaged Property includes aluminum wiring, then Borrower will give prompt Notice to Lender of any malfunction or fire associated with, or resulting from, the existence of any aluminum wiring located on the Mortgaged Property ("**Aluminum Wiring Event**"). In addition to any Restoration of the Mortgaged Property required as a result of the Aluminum Wiring Event, following the Aluminum Wiring Event, Borrower will complete each of the following Repairs:

  (i) Replace all aluminum wiring associated with the Aluminum Wiring Event with building code compliant copper wiring within 30 days following the Aluminum Wiring Event or as otherwise required by Lender.

  (ii) Replace all remaining aluminum wiring located in each building affected by the Aluminum Wiring Event with building code compliant copper wiring within 1 year following the Aluminum Wiring Event or as otherwise required by Lender.

(i) Galvanized Steel or Polybutylene Piping. If the Mortgaged Property contains galvanized steel piping and/or polybutylene piping, then Borrower will give prompt Notice to Lender of any leaks in or other failure of the galvanized steel/polybutylene piping located on the Mortgaged Property ("**Galvanized Steel/PB Piping Event**"). In addition to any Restoration of the Mortgaged Property required as a result of the Galvanized Steel/PB Piping Event, following the Galvanized Steel/PB Piping Event, Borrower will complete each of the following Repairs:

  (i) Replace all galvanized steel/polybutylene piping associated with the Galvanized Steel/PB Piping Event with building code compliant copper, PVC or CPVC piping within 30 days following the Galvanized Steel/PB Piping Event or as otherwise required by Lender.

  (ii) Replace all remaining galvanized steel/polybutylene piping located in each building affected by the Galvanized Steel/PB Piping Event with building code compliant copper, PVC or CPVC piping within 1 year following the Galvanized Steel/PB Piping Event or as otherwise required by Lender.

(j) *Stab-Lok* Circuit Breakers and Panels. If the Mortgaged Property includes *Stab-Lok* electric circuit breakers or panels, then Borrower will give prompt Notice to Lender of any malfunction or fire associated with, or resulting from, the existence of any of the *Stab-Lok* electric circuit breakers or panels located on the Mortgaged Property ("**Stab-Lok Event**"). In addition to any Restoration of the Mortgaged Property required as a result of the Stab-Lok Event, following the Stab-Lok Event, Borrower will complete each of the following Repairs:

  (i) Replace all *Stab-Lok* electric circuit breakers and panels associated with each Stab-Lok Event with building code compliant electric circuit breakers and panels within 30 days following the Stab-Lok Event or as otherwise required by Lender.

  (ii) Replace all remaining *Stab-Lok* electric circuit breakers and panels located in the building affected by the Stab-Lok Event with building code compliant electric circuit breakers and panels within 1 year following the Stab-Lok Event or as otherwise required by Lender.

(k) No Reduction of Housing Cooperative Charges. If Borrower is a housing cooperative corporation or association, then until the Indebtedness is paid in full, Borrower will not reduce the maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements below a level which is sufficient to pay all expenses of Borrower, including all operating and other expenses for the Mortgaged Property and all payments due pursuant to the terms of the Note and any Loan Documents.

(l) Property Management.

   (i) As of the Effective Date, the Mortgaged Property is managed as shown in Article I. Borrower will not change the property management structure or the identity of the Property Manager (if applicable) without Lender's prior consent.

   (ii) During any period in which Borrower self-manages the Mortgaged Property, Borrower will not engage or pay any other Person (whether an Affiliate of Borrower or otherwise) a fee or other compensation for managing the Mortgaged Property.

   (iii) During any period in which Borrower engages a Property Manager (whether an Affiliate of the Borrower or otherwise), all the following are applicable:

      (A) Borrower will maintain a written property management agreement with the Property Manager, and that agreement will be terminable by Borrower with no more than 30 days' Notice to the Property Manager. Borrower's right to terminate the property management agreement will not require Borrower to show cause for the termination or pay the Property Manager a penalty or fee.

      (B) Borrower will provide a copy of the property management agreement and any renewals or modifications of the property management agreement to Lender.

      (C) Without Lender's prior consent, Borrower will not cancel or modify the property management agreement, except that Borrower and Property Manager may renew the property management agreement on identical terms.

      (D) As of the Effective Date, Borrower has confirmed the Property Manager is not on any Prohibited Parties List. Borrower will confirm at the time of entering into or renewing any property management agreement that Property Manager is not on any Prohibited Parties List.

   (iv) If at any time, Lender determines that the Mortgaged Property is not being managed in accordance with generally accepted management practices for properties similar to the Mortgaged Property, then Lender may require that Borrower terminate any existing property management agreement or cease to self-manage the Mortgaged Property and engage a Property Manager satisfactory to Lender.

**6.10   Insurance.**

(a) Insurance Covenant. Borrower will at all times during the term of this Loan Agreement maintain, at its sole expense, for the mutual benefit of Borrower and Lender, Insurance as required by Lender and applicable law, with such endorsements as Lender may reasonably require from time to time and which are customarily required by institutional lenders for properties comparable to the Mortgaged Property.

(b) Property Insurance. Borrower will maintain Insurance against relevant physical hazards that may cause damage to the Mortgaged Property, which Insurance may include coverage against loss or damage from fire, wind, hail, and other related perils within the scope of a "Special Causes of Loss" policy form, general boiler and machinery, business income, flood (if any of the Improvements are

Inspections prepared by third parties and delivered to Lender. Lender reserves the right, and Borrower expressly authorizes Lender, to make available to any party, including any prospective bidder at a foreclosure sale of the Mortgaged Property, the results of any Environmental Inspections made by or for Lender with respect to the Mortgaged Property. Borrower consents to Lender notifying any party (either as part of a notice of sale or otherwise) of the results of any Environmental Inspections made by or for Lender. Borrower acknowledges that Lender cannot control or otherwise ensure the truthfulness or accuracy of the results of any Environmental Inspections and that the release of such results to prospective bidders at a foreclosure sale of the Mortgaged Property may have a material and adverse effect upon the amount that a party may bid at such sale. Borrower agrees that Lender will have no liability whatsoever as a result of delivering the results of any Environmental Inspections made by or for Lender to any third party, and Borrower releases and forever discharges Lender from any and all claims, damages or causes of action arising out of, connected with or incidental to the results of the delivery of any Environmental Inspections made by or for Lender.

(f) Remedial Work. If any investigation, site monitoring, containment, clean-up, Restoration or other remedial work ("**Remedial Work**") is necessary to comply with any Hazardous Materials Law or order of any Governmental Authority that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property, or is otherwise required by Lender as a consequence of any Prohibited Activity or Condition or to prevent the occurrence of a Prohibited Activity or Condition, then Borrower will, by the earlier of (i) the applicable deadline required by Hazardous Materials Law, or (ii) 30 days after Notice from Lender demanding such action, begin performing the Remedial Work, and thereafter diligently prosecute it to completion, and must in any event complete the work by the time required by applicable Hazardous Materials Law. If Borrower fails to begin on a timely basis or diligently prosecute any required Remedial Work, then Lender may, at its option, cause the Remedial Work to be completed, in which case Borrower will reimburse Lender on demand for the cost of doing so. Any reimbursement due from Borrower to Lender will become part of the Indebtedness as provided in Section 8.02.

(g) Borrower Contest of Order. Notwithstanding Section 6.12(f), Borrower may contest the order of any Governmental Authority in good faith through appropriate proceedings, provided that (i) Borrower has demonstrated to Lender's satisfaction that any delay in completing Remedial Work pending the outcome of such proceedings would not (A) result in damage to the Mortgaged Property or to persons who use or occupy the Improvements or (B) otherwise impair Lender's interest under this Loan Agreement, and (ii) if any delay in completing the Remedial Work results in a Lien against the Mortgaged Property, Borrower must promptly furnish to Lender a bond or other security satisfactory to Lender in an amount not less than 150% of the claim that underlies the Lien.

## 6.13  Borrower Entity Requirements and Limitations

(a) This Section 6.13 is not applicable to Borrowers who are natural persons.

(b) Except as set forth in Section 6.13(a), until the Indebtedness is paid in full, Borrower will satisfy each of the following requirements:

   (i) It will preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its formation or organization and will do all things necessary to observe organizational formalities.

   (ii) It will not merge or consolidate with any other Person.

   (iii) It will not take any action to dissolve, wind-up, terminate or liquidate in whole or in part; to sell, transfer or otherwise dispose of all or substantially all of its assets; to change its legal structure; to transfer or permit the direct or indirect transfer of any partnership, membership or other equity interests, as applicable, other than Transfers permitted under this Loan Agreement; to issue additional partnership, membership or other equity interests, as applicable, or to seek to accomplish any of the foregoing.

- (iv) It will not maintain its assets in a way difficult to segregate and identify.

(c) If Borrower is identified as a Single Asset Entity in Article I, then Borrower will satisfy each of the following requirements:

- (i) It will not acquire, own, hold, lease, operate, manage, maintain, develop or improve any assets other than the Mortgaged Property and such Personalty as may be necessary for the operation of the Mortgaged Property and will conduct and operate its business as presently conducted and operated.

- (ii) It will not engage in any business or activity other than the ownership, operation and maintenance of the Mortgaged Property and activities incidental to such ownership, operation, and maintenance.

(d) If Borrower is identified as a Restricted Multiple Asset Entity in Article I, then Borrower will satisfy each of the following requirements:

- (i) It will not acquire, own, hold, lease, operate, manage, maintain, develop or improve any assets other than the Mortgaged Property, the Permitted Property, and such Personalty as may be necessary for the operation of the Mortgaged Property and the Permitted Property and will conduct and operate its business as presently conducted and operated.

- (ii) It will not engage in any business or activity other than the ownership, operation and maintenance of the Mortgaged Property and the Permitted Property and activities incidental to such ownership, operation, and maintenance.

(e) Reserved. [Larger Loan Requirements]

**6.14 Restoration, Priority Repairs, Capital Replacements, Property Improvements, and Other Repairs.**

(a) <u>Borrower Obligated to Complete Priority Repairs (including PR-90 Repairs)</u>. Borrower will commence all Priority Repairs (including PR-90 Repairs) identified in the Physical Risk Report as soon as practicable after the Effective Date and will diligently proceed with and complete such Priority Repairs.

(b) <u>Completion of Work in Good and Workmanlike Manner</u>. All (i) Restoration, (ii) Priority Repairs, (iii) Capital Replacements, and (iv) Property Improvements and other Repairs that Borrower elects to begin (collectively, "**Work**") will be completed in a good and workmanlike manner, with suitable materials, and in accordance with good building practices and all applicable laws, ordinances, rules, regulations, building setback lines and restrictions applicable to the Mortgaged Property. Borrower agrees to cause the replacement of any material or work that is defective, unworkmanlike or that does not comply with the requirements of this Loan Agreement, as determined by Lender.

(c) <u>No Conditional Sales Contracts or Lease Agreements</u>. Without the prior written consent of Lender, no materials, machinery, equipment, fixtures or any other part of any Work will be purchased or installed under conditional sale contracts or lease agreements, or any other arrangement wherein title to such Work or any portion of such Work is retained or subjected to a purchase money security interest, or the right is reserved or accrues to anyone to remove or repossess any such Work or to consider them as personal property.

(d) <u>Lien Protection</u>. Borrower will promptly pay or cause to be paid, when due, all costs, charges and expenses incurred in connection with the construction and completion of any Work, and will keep the Mortgaged Property free and clear of any and all Liens other than the Lien of the Security Instrument and any other junior Lien to which Lender has consented.

7.02 **Prohibited Transfers.** The occurrence of any of the following Transfers will constitute an Event of Default under this Loan Agreement:

    (a) A Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property, including the grant, creation or existence of any Lien on the Mortgaged Property, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of the Security Instrument, other than the Lien of the Security Instrument, or any other Lien to which Lender has consented.

    (b) A Transfer or series of Transfers of any legal or equitable interest of any Guarantor which owns a direct or indirect interest in Borrower that result(s) in such Guarantor no longer owning any direct or indirect interest in Borrower.

    (c) A Transfer or series of Transfers of any legal or equitable interest since the Effective Date that result(s) in a change of more than 50% of the ownership interests (or beneficial interests, if the applicable entity is a trust) in Borrower or any Person that Controls Borrower.

    (d) A Transfer of any general partnership interest in a partnership, or any manager interest (whether a member manager or nonmember manager) in a limited liability company, if such partnership or limited liability company, as applicable, is Borrower or a Person that Controls Borrower. However, up to 50% of such general partnership or managing member interests in Borrower or a Person that Controls Borrower may be converted to limited partnership or non-managing member interests, as applicable, and those interests may then be Transferred subject to the provisions of this Loan Agreement.

    (e) If Borrower or any Person that Controls Borrower is a corporation whose outstanding voting stock is held by 100 or more shareholders, one or more Transfers by a single transferor within a 12-month period affecting an aggregate of 10% or more of that stock.

    (f) The grant, creation or existence of any Lien, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of the Security Instrument, on any ownership interest in Borrower or any Person that Controls Borrower, if the foreclosure of such Lien would result in a Transfer prohibited under Sections 7.02(b), (c), (d), or (e).

    (g) A change in the trustee of a trust that is a Borrower or a Person that Controls Borrower unless (i) the change is permitted in Section 7.04 or (ii) the trust is a real estate investment trust.

    (h) If Borrower or any Person that Controls Borrower is a trust, the termination or revocation of the trust.

7.03 **Conditionally Permitted Transfers.** The occurrence of any of the following Transfers will not constitute a prohibited Transfer under Section 7.02, provided that Borrower or New Borrower, as applicable, has complied with all applicable specified conditions in this Section 7.03.

    (a) **Transfer by Devise, Descent or Operation of Law (Entity Borrowers Only).** Upon the death of a natural person, a Transfer which occurs by devise, descent, or by operation of law (but excluding a Transfer as a result of the death of a Borrower that is a natural person) to one or more Immediate Family Members of such natural person or to a trust or family conservatorship established for the benefit of such Immediate Family Members (each a "**Beneficiary**"), provided that each of the following conditions is satisfied:

        (i) The Property Manager (if applicable) continues to be responsible for the management of the Mortgaged Property, and such Transfer will not result in a change in the day-to-day operations of the Mortgaged Property.

        (ii) Lender receives confirmation acceptable to Lender that Borrower continues to satisfy the requirements of Section 6.13.

in the Note, provided that, prior to such Transfer, all of Lender's requirements are satisfied, as determined by Lender, including payment by Borrower of each of the following:

(i) A Transfer Processing Fee.

(ii) All of Lender's costs, including the cost of all title searches, title insurance and recording costs, and all Attorneys' Fees and Costs incurred in reviewing the Transfer request and any fees charged by the Rating Agencies, if applicable.

(iii) In the case of a Transfer of either (A) all or any part of the Mortgaged Property or (B) direct or indirect Control of the Borrower, a Transfer Fee.

Notwithstanding subsections 7.05(i) and (iii) above, Borrower will not be required to pay either a Transfer Processing Fee or a Transfer Fee for the review of a proposed easement Transfer.

**ARTICLE VIII   EVENTS OF DEFAULT AND REMEDIES.**

8.01 **Events of Default.** The occurrence of any one or more of the following will constitute an "**Event of Default**" under this Loan Agreement:

(a) Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document.

(b) Borrower or any of its officers, directors, trustees, general partners, or managers, or any Guarantor, commits fraud or makes a material misrepresentation or material omission in connection with any of the following:

(i) The application for or creation of the Indebtedness.

(ii) Any financial statement, Rent Schedule or other report or information provided to Lender during the term of the Indebtedness.

(iii) Any request for Lender's consent to any proposed action, including a request for disbursement of funds under this Loan Agreement.

(c) Borrower has made any representation or warranty in this Loan Agreement that is false or misleading in any material respect.

(d) Borrower fails to maintain the Insurance coverage required by Section 6.10.

(e) Borrower fails to comply with the Condemnation provisions of Section 6.11.

(f) Borrower fails to comply with the provisions of Section 6.13.

(g) A Transfer occurs that violates the provisions of Article VII, whether or not any actual impairment of Lender's security results from such Transfer.

(h) A forfeiture action or proceeding, whether civil or criminal, is commenced which could result in a forfeiture of the Mortgaged Property or otherwise materially impair the Lien created by the Security Instrument or Lender's interest in the Mortgaged Property.

(i) The holder of any other debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property exercises any right to declare all amounts due under that debt instrument immediately due and payable.

(j) Borrower fails to perform any of its obligations under any of the following, and such failure continues beyond any applicable cure period:

"**Immediate Family Members**" means a Person's spouse, domestic partner, parent (including step-parent), child (including stepchild), grandchild (including step-grandchild) or sibling (including step-siblings).

"**Improvements**" is defined in the Security Instrument.

"**Indebtedness**" means (i) the principal of, (ii) interest at the fixed or variable rate set forth in the Note on the principal of, and (iii) all other amounts due at any time under, the Note, this Loan Agreement or any other Loan Document, including prepayment charges, late charges, default interest, and advances to protect the security of the Security Instrument as provided in Section 8.02.

"**Insurance**" means Property Insurance, liability insurance and all other insurance that Lender requires Borrower to maintain pursuant to this Loan Agreement.

"**Insurance Reserve Fund**" is defined in Section 4.02(a).

"**Land**" means the land described in Exhibit A to the Security Instrument.

"**Leases**" is defined in the Security Instrument.

"**Lender**" means the entity identified as "Lender" on page 1 of this Loan Agreement, or any subsequent holder of the Note.

"**Lien**" means any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance on the Mortgaged Property.

"**Loan**" is defined on page 1 of this Loan Agreement.

"**Loan Documents**" means the Note, the Security Instrument, this Loan Agreement, the Guaranty, all other guaranties, all indemnity agreements, all collateral agreements, UCC filings, O&M Programs, the MMP and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan.

"**Loan Servicer**" means the entity that from time to time is designated by Lender to collect payments and deposits and receive Notices under the Note, the Security Instrument, this Loan Agreement and any other Loan Document, and otherwise to service the Loan for the benefit of Lender.

"**Manager**" or "**Managers**" means a Person who is named or designated as a manager or managing member or otherwise acts in the capacity of a manager or managing member of a limited liability company in a limited liability company agreement or similar instrument under which the limited liability company is formed or operated.

"**Material Adverse Effect**" means a significant detrimental effect on: (i) the Mortgaged Property, (ii) the business, prospects, profits, operations or condition (financial or otherwise) of Borrower, (iii) the enforceability, validity, perfection or priority of the Lien of any Loan Document, or (iv) the ability of Borrower to perform any obligations under any Loan Document.

"**Maturity Date**" is defined in the Note.

"**Minimum U.S. Deposit**" is defined in the Guaranty.

"**MMP**" means a moisture management plan to control water intrusion and prevent the development of Mold or moisture at the Mortgaged Property throughout the term of this Loan Agreement.

"**Mold**" means mold, fungus, microbial contamination or pathogenic organisms.

"**Mortgaged Property**" is defined in the Security Instrument.

"**Non-Residential Lease**" is a Lease of a portion of the Mortgaged Property to be used for non-residential purposes.